IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Mustang Innovation, LLC, | ) | Civil Action No.: 4:14-cv-3756-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Sonoco Products Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| Sonoco Products Company, | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Mustang Innovation, LLC and | ) | |
| William Fielding Jones, | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |
| _____ | ) | |

**INTRODUCTION**

This matter is before the court on Defendant/Counterclaim Plaintiff Sonoco Products Company's ("Defendant" or Sonoco") Motion to Quash, filed March 19, 2015.  *See* Def.'s Mot., ECF No. 21.  Defendant seeks to quash three subpoenas issued by Plaintiff/Counterclaim Defendant Mustang Innovation, LLC ("Plaintiff" or "Mustang") on March 6, 2015.  *See id.* at 1. Plaintiff timely filed a response in opposition to Defendant's motion on April 6, 2015.  *See* Pl.'s Resp., ECF No. 24.  Defendant then filed a reply in support of its motion on April 16, 2015.  *See* Def.'s Reply, ECF No. 27.  For the reasons stated below, the Court denies Defendant's motion.

**STANDARD**

**I.    Scope of Discovery**

Rule 26(b)(1) governs the scope of discovery and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).  Relevant information is a broader concept than admissible evidence.  To be relevant, information need only be calculated to lead to the discovery of admissible evidence, it need not be admissible itself.  "Relevant evidence" is defined to mean evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401.

"On relevancy matters, the trial court has broad discretion." *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992).  The court may restrict the discovery of otherwise allowable information if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).  The Court may also restrict discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).  Broad discretion is afforded a district court's decision to grant or deny a motion to

2

compel. *Erdmann v. Preferred Research Inc. of Ga.*, 852 F.2d 788, 792 (4th Cir. 1988) (citation omitted).

## II.    Motions to Quash Subpoena

Mustang served subpoenas on the following: 1) Mark Oser and WDO Enterprises; 2) Keith Ogren and White Rock Consulting; and 3) Mike Parkinson and Pro Pack Services.  Oser, Ogren, and Parkinson previously worked as independent contractors for Mustang.  Each subpoena sought any and all communications between the individuals through their respective companies and Modulus Sourcing as well as any and all communications with Sonoco or any supplier in the corrugated industry.

Under Rule 45 of the Federal Rules of Civil Procedure, a "command in a subpoena to produce documents . . . requires the responding person to permit inspection, copying, testing, or sampling of the materials."  Fed. R. Civ. P. 45(a)(1)(D).  If the person commanded to produce documents makes a timely written objection, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection."  Fed. R. Civ. P. 45(d)(2)(B)(i).  A court may, on timely motion, quash or modify a subpoena that subjects a person to undue burden or requires disclosure of privileged or other protected matter.  Fed. R. Civ. P. 45(d)(3)(A).  "Ordinarily 'only the party or person to whom the subpoena is directed has standing to move to quash or otherwise object to a subpoena.'"  *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2187, 2014 WL 1660386, at *2 (S.D.W. Va. Apr. 22, 2014) (quoting *Transcor, Inc. v. Furney Charters*, 212 F.R.D. 588, 590 (D. Kan. 2003)).  An exception exists, however, when the person objecting to the subpoena has a personal right or privilege in the information sought by the requester.  *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005) (citations omitted).  "[T]he scope of discovery allowed under a subpoena is the same as the scope of

discovery allowed under Rule 26." *HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013) (citing *Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012)).

### III.     Trade Secrets/Proprietary Information

Defendant has objected on the basis that Plaintiff seeks documents that contain its proprietary information, intellectual property, and trade secrets. *See* ECF No. 21 at 2.  In seeking to prevent discovery based on a trade secrets claim, the party resisting discovery must "demonstrate to the Court that the information being sought is a trade secret and that its disclosure might be harmful." *In re Sealed Air Corp.*, 220 F.R.D. 452, 453 (D.S.C. 2004) (citing *Coca–Cola Bottling Co. of Shreveport, Inc. v. Coca–Cola Co.*, 107 F.R.D. 288, 292 (D. Del. 1985)).  "Once shown, the burden shifts to the party that seeks the discovery to establish the relevance of the trade secret to the lawsuit and that it is necessary to the action." *Id.* (citing *Coca-Cola*, 107 F.R.D. at 292).  Finally, "if relevance and necessity are established, the Court 'must balance the need for the information against the injury that would ensue if disclosure is ordered.'" *Id.* (quoting *Coca-Cola*, 107 F.R.D. at 292).

"There is no absolute privilege to protect trade secrets from disclosure during the discovery process." *Id.* (citing *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1185 (D.S.C. 1974)).  Discovery of confidential information, however, "is virtually always ordered once the movant has established that the secret information is relevant and necessary." *Id.* (quoting *Coca– Cola Bottling Co.*, 107 F.R.D. at 293) (internal quotation marks omitted).   Under Rule 45(d)(3)(B)(i) and its counterpart Rule 26(c)(1)(g), confidential information:

> is more than just routine business data; instead, it is important proprietary information that provides the business entity with a financial or competitive advantage when it is kept secret, and results in financial or competitive harm when it is released to the public.

4

*Cobb v. Ramey Motors, Inc.*, No. 1:07-00280, 2014 WL 7159235, at *4 (S.D.W. Va. Dec. 15, 2014) (quoting *In re Boston Scientific Corp. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2326, 2014 WL 1329944, at *2 (S.D.W. Va. Mar. 31, 2014)).  Confidential commercial information has been defined as "information, which if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *Massey Coal Servs., Inc. v. Victaulic Co. of Am.*, 249 F.R.D. 477, 482 (S.D.W. Va. 2008).

## BACKGROUND

This case arises out of a services contract between Plaintiff and Defendant.  *See* Am. Compl., ECF No. 23 at ¶ 3; Contract, ECF No. 21-4.  Plaintiff asserts claims against Defendant for: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"); (4) conversion; (5) trade secret misappropriation; (6) unjust enrichment; and (7) tortious interference with an existing contract.  *See generally* ECF No. 23.  In response, Defendant asserts counterclaims against Plaintiff for: (1) breach of contract; (2) breach of contract accompanied by a fraudulent act; (3) fraud; (4) violation of SCUTPA; (5) negligent misrepresentation; (6) unjust enrichment; and (7) declaratory/injunctive relief as to license.[1]  *See generally Ans. and Countercl.*, ECF No. 26.

This discovery dispute arose after Plaintiff subpoenaed three independent contractors who used to work for Plaintiff.  Defendant objected to the subpoenas, asserting that the subpoenas seek information that is beyond the scope of discovery, including Sonoco's proprietary information/trade secrets.  *See* ECF No. 21 at 2.  Defendant asserts that Mustang agreed to provide certain services to Sonoco in the contract, including developing a "should cost model" ("the Modeling Process").  *See*

---

[1] Defendant's claims for fraud, violation of SCUTPA, and negligent misrepresentation are also asserted against William Fielding Jones ("Jones"), who Defendant alleges was the president of Mustang.  *See* ECF No. 26 at 10–15.

*id.* Defendant contends that the contract provided that upon termination "for any reason" of the contract, Mustang would grant Sonoco an irrevocable license to use the Modeling Process. *See id.* Defendant contends that Mustang misrepresented its progress during the contract term and engaged in a pattern of deceit. *See id.* at 2–3. Sonoco alleges it did not receive the benefits promised pursuant to the terms of the contract, and therefore terminated it on May 23, 2014. *See id.* at 3. Defendant asserts it retained the former Mustang contractors to fix and improve the software licensed by Plaintiff, and that these individuals performed the services under a newly formed entity called Modulus Sourcing Group, LLC. *See id.* Defendant argues that communications between these individuals and Sonoco after termination of the contract bore no relation to the contract. *See id.* at 3–4. Moreover, Defendant avers that the communications contain proprietary information and trade secrets that it developed at a substantial cost after termination of the contract. *See id.* at 4. Defendant argues that, as drafted and issued, the subpoenas require the individuals to provide unrestricted access to this confidential information to a player in the marketplace and that this would cause harm to Sonoco's competitive position. *See id.* Accordingly, Sonoco argues they should be quashed.

In response, Plaintiff alleges Defendant knowingly procured the breach of Mustang's agreements with these individuals in order to have them perform the services Mustang had originally been retained to perform. *See* ECF No. 24 at 2. Plaintiff also contends that Sonoco sought out these contractors to make use of Mustang's proprietary information beyond the scope of the contract between Mustang and Sonoco, and rebrand Mustang's intellectual property as its own. *See id.* Plaintiff notes that it has proposed a consent order regarding confidential and proprietary documents, and that it agrees to a modification to the subpoenas, limiting the time frame of the

documents from January 2013 to the present.  *See id.* at 2–3.  Plaintiff then argues that the subpoenas should not be quashed, as it would result in foreclosure of discovery of key information regarding its claims, particularly the misappropriation of trade secrets and tortious interference with existing contract claims.  *See id.* at 3.  Plaintiff then contends that the discovery it seeks relates directly to the issues in this case, namely whether Sonoco improperly hired the Mustang contractors and whether or not they have continued to use proprietary information of Mustang.  *See id.* at 4. Plaintiff avers that the subpoenas were not overbroad for seeking information beyond the contract termination date, as it has alleged that the former contractors and Sonoco continued to use its proprietary information beyond that date.  *See id.* at 5.  Plaintiff concludes by noting that it is ready to enter into a protective order of confidentiality to protect this information from being disclosed beyond the extent necessary for the litigation.[2]  *See id.* at 6.

Defendant replied, arguing that its main concern is that Sonoco's confidential business information will end up in the hands of a competitor in the marketplace: the Plaintiff.  *See* ECF No. 27 at 2.  Defendant reiterates that it only employed the former Mustang contractors after it terminated the contract with Plaintiff, and that they were retained to create a "new" modeling process since Mustang's was unusable.  *See id.*  Defendant also contends that any proprietary information developed after the termination of the Contract is immaterial to the claims in this action.  *See id.* at 2–3.  Defendant notes that the Contract provided that upon termination for any reason, Mustang would grant Sonoco a license to use the Modeling Process, and thus Mustang cannot claim that Sonoco is using any of its proprietary information as it had full contractual rights to use the Modeling Process.  *See id.* at 3.  Moreover, Defendant reiterates that what Mustang did develop is unusable and thus the contractors have been working on new a new pricing model.  *See*

---

[2] The parties did in fact enter into a confidentiality order on April 23, 2015.  *See* ECF No. 30.

*id.* at 3–4.  Finally, Defendant argues that Plaintiff's tortious interference claim relied on a covenant not to compete in Plaintiff's contracts with the contractors, but that the contract produced in discovery had no such covenant.  *See id.* at 4.

## DISCUSSION

The Court assumes for the purposes of this motion that the information sought by Plaintiff via subpoena to the contractors is in fact confidential commercial information and that its disclosure to the general public would be harmful.  Plaintiff does not dispute the classification of the material as confidential or argue that disclosure would not be harmful to Defendant's business.  In fact, Plaintiff consented to a confidentiality order to address the parties' concerns about the nature of the discovery in this matter.  Accordingly, the primary issue for the Court is whether Plaintiff has demonstrated that the information is relevant to this action and discovery is necessary.  If the Court finds Plaintiff has made a sufficient showing, then it must balance the need for the information against the injury that would occur from disclosure.

In support of its motion to quash, Defendant's primary arguments revolve around the fact that the contract between it and Plaintiff was terminated.  Defendant contends that, pursuant to the terms of the contract, Sonoco was granted a license to use the Modeling Process immediately upon termination, no matter the reason.  Moreover, Defendant argues that it did not engage the former Mustang contractors until after the contract was terminated, and it hired them to develop a new Modeling Process rather than expand on Mustang's.  The problem with these arguments, however, is that Defendant essentially seeks to have the Court issue a ruling interpreting the terms of the contract in connection with this motion to quash.  Moreover, Defendant also seeks to have the Court implicitly rule whether Sonoco's conduct regarding the retention of the former Mustang contractors was appropriate.  As Plaintiff notes in its briefing, the terms of the contract, including interpretation

8

of the software license provision, are central to the issues of this case. *See* ECF No. 24 at 4. Plaintiff has made serious allegations that Sonoco and the contractors rebranded Plaintiff's intellectual property in developing the "new" modeling process. *See* ECF No. 23 at ¶¶ 45–48. Moreover, Plaintiff has alleged that Defendant interfered with its contracts with Mustang's former independent contractors, and procured the breach of said contracts to have them perform the services that Mustang had contracted with Defendant to perform. *See id.* at ¶¶ 58–63. Finally, Plaintiff has contended that Defendant in fact breached the contract between them. *See id.* at ¶¶ 17–24.

These sorts of factual and legal disputes are appropriately resolved at the summary judgment or trial stage, based on the evidence and arguments of the parties. The Court's task at this juncture is merely determining whether the information sought is relevant to the claims and defenses asserted in this matter, which it finds is the case. Plaintiff issued these subpoenas to obtain the contractors' communications with their new entity, Modulus, as well as their communications with Sonoco, to determine precisely when they began their dealings with Sonoco. This is a central issue in this matter and is certainly relevant to the claims and defenses asserted by Plaintiff. The mere fact that Defendant may ultimately show (and the Court makes no finding as to the merits of this argument) that no proprietary information of Mustang's was used improperly does not bar Mustang from being able to seek discovery that may prove its claims. Accordingly, the Court finds that the subpoenas seek information that is relevant to the claims and defenses asserted in this matter.

The Court will, however, limit the scope of the subpoenas to some degree. First, Plaintiff consented in its brief to limit the time frame of the documents sought to January 2013 to the present. The Court notes that this is a good start. However, the contract between Sonoco and Mustang was not even entered into until on or about September 20, 2013. *See* ECF No. 21-4 at 18. Accordingly,

any relevant communications the contractors may have had which would relate to the claims and defenses asserted in this action would, in all likelihood, not have arisen until after this date.  As a result, the Court will limit the applicable time frame of the subpoenas to September 2013 to the present.  Moreover, the Court finds that Plaintiff has failed to sufficiently establish the relevance of the contractors' communications with other "supplier[s] in the corrugated industry."  Plaintiff did not even attempt to address the relevance of these communications to its claims and defenses in its brief.  Accordingly, the Court will also limit the scope of the subpoenas to communications between the contractors (or the respective business entities operated by them as identified in the subpoenas) and Modulus Sourcing and communications between the contractors (or their respective entities) and Sonoco.

Having found some of the information sought to be discoverable, the Court then turns to the balancing test and finds that Defendant has failed to show that the potential injury if disclosure is ordered would outweigh Plaintiff's need for the information.  The parties have already consented to a confidentiality order, covering the entirety of discovery in this matter.  *See* Order, ECF No. 30 at 1.  If Sonoco is concerned about the contents of the documents produced in response to the subpoenas, it may designate the documents as confidential.  *See id.* at 2.  Additionally, if Sonoco needs further protection to ensure the confidentiality of any proprietary information or materials, it may submit an additional protective order.  Counsel for Sonoco should consult with counsel for Mustang and seek their consent on the language of any proposed order since Mustang's counsel has already submitted one to Sonoco.  If the parties cannot consent to such an order, both sides can submit a proposed additional protective order for this Court's consideration.  Accordingly, the Court finds that Plaintiff's need for the information outweighs the potential harm from disclosure.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion to quash is **DENIED**.  **IT IS FURTHER ORDERED** that the scope of Plaintiff's subpoenas is limited as set forth herein.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
July 24, 2015